IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:12-CV-57-D

| | |
|---|---|
| DANFORD EASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Danford Eason ("Eason" or "plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner" or "defendant") denying his application for benefits. The parties filed motions for judgment on the pleadings [D.E. 19, 24] and memorandums in support [D.E. 20, 25]. As explained below, the court grants the Commissioner's motion, denies Eason's motion, and affirms the Commissioner's final decision.

I.

On January 26, 2009, Eason applied for benefits, alleging a disability onset date of September 19, 2008. See Transcript of Proceedings ("Tr.") 8. The application was denied initially and upon reconsideration, and Eason timely requested a hearing. Tr. 8, 59. On October 18, 2010, an Administrative Law Judge ("ALJ") held a hearing. Tr. 17–44. On January 5, 2011, the ALJ found that Eason was not disabled and not entitled to benefits. Tr. 8–16. Eason sought review with the Appeals Council, to no avail. Tr. 1–4; see 20 C.F.R. § 404.981. Eason timely sought judicial review. See 42 U.S.C. § 405(g).

In reviewing the Commissioner's denial of benefits, a district court is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. See id.; Walls v. Barnhart, 296

F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla of evidence but may be somewhat less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When reviewing for substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997).

In evaluating disability claims, the Commissioner follows a familiar five-step process. The Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to the claimant's past relevant work; and (5) if not, could perform any other work in the national economy. See 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in steps one through four. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the process reaches the fifth step, the Commissioner has the burden of proving that the claimant, despite impairments, can perform a job that exists in significant numbers in the national economy. See id.; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

In the case of multiple impairments, the ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered

2

separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If the ALJ does find a medically severe combination of impairments, the combined impact of those impairments must be considered throughout the disability determination process. Id.

II.

Eason was 45 years old on the alleged onset date of disability and 47 years old on the date of his administrative hearing. See Tr. 15 ¶ 7. Eason is a high school graduate and completed a two-year associate's degree in college. See Tr. 15 ¶ 8, 22. His past work includes employment as tractor-trailer truck driver. Tr. 15 ¶ 6, 23.

At step one, the ALJ found that Eason had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 10 ¶ 2. At step two, the ALJ found that Eason had the following medically determinable impairments that were severe within the meaning of the Regulations: osteoarthritis, residuals of total left hip replacement, depression, femoral nerve palsy, obesity, and hypertension. Tr. 10 ¶ 3. At step three, the ALJ found that Eason's impairments did not meet or medically equal any of the listings. Tr. 11 ¶ 4.

The ALJ next determined that Eason had the residual functional capacity ("RFC") to perform a range of sedentary work,[1] subject to the limitations that he not operate foot controls or

---
[1] The Regulations define "sedentary work" as involving:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Dictionary of Occupational Titles ("DOT") defines "sedentary work" as:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry,

3

climb ladders, avoid exposure to hazards or moving machinery, perform postural activities (such as stooping, climbing, crawling, and crouching) only occasionally (i.e., "less than frequently"), and perform only simple, routine, repetitive tasks ("SRRT's"). Tr. 12 ¶ 5.

Based on this RFC, the ALJ found at step four that Eason was not capable of performing his past relevant work. Tr. 15 ¶ 6. At step five, the ALJ accepted a vocational expert's ("VE") testimony and found that there were jobs in the national economy existing in significant numbers that Eason could perform, including work as a food and beverage clerk, charge account clerk, and surveillance system monitor. Tr. 16 ¶ 10. Accordingly, the ALJ found that Eason was not disabled. Tr. 16 ¶ 11.

Eason contends that the ALJ erred by: (1) misapplying the 12-month duration requirement; (2) not obtaining a medical source statement ("MSS") from his treating orthopedist, Lawrence N. Larabee, Jr., M.D.; (3) not conducting a function-by-function physical RFC assessment; (4) improperly assessing his mental RFC; (5) making inadequate credibility findings; and (6) posing an incomplete hypothetical to the VE. [D.E. 20] 8–18. The court examines the arguments seriatim.

First, Eason contends that the ALJ erred by purportedly determining that his hip impairments were not disabling because they did not satisfy the 12-month duration requirement. The 12-month duration requirement provides that an impairment must be one "which can be

---

      push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

U.S. Dep't of Labor, DOT app. C § IV.c (4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited September 11, 2013). "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. See 20 C.F.R. § 404.1567.

4

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509; 20 C.F.R. § 404.1520(a)(4)(ii); DeRohn v. Astrue, No. TMD 11-2445M, 2013 WL 1628914, at *2 n.2 (D. Md. Apr. 15, 2013) (unpublished) ("[D]isability will be denied at step two where the impairment did not last or could not be expected to last twelve months—the so-called duration requirement.").

The ALJ found at step two that Eason had the severe, hip-related impairments of osteoarthritis, residuals of total left hip replacement, and femoral nerve palsy. Tr. 10 ¶ 3. The ALJ ultimately determined that these impairments were not disabling because, notwithstanding them, Eason retained the RFC to perform sedentary work and jobs existed in significant numbers in the national economy that Eason could perform. Tr. 12 ¶ 5, 15 ¶ 10. The ALJ did not, however, find that Eason's hip impairments were not disabling due to the failure to meet the 12-month duration requirement. See Tr. 12–16. Accordingly, the court rejects Eason's first argument.

Next, Eason contends that the ALJ erroneously failed to obtain an MSS from Dr. Larabee, who treated Eason's hip impairments. "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The duty to develop the record includes assisting the claimant in obtaining medical reports from the claimant's medical sources when the claimant permits, as well as recontacting a medical source when the evidence received from it does not enable the ALJ to determine whether the claimant is disabled. See 20 C.F.R. § 404.1512(d)–(e). An ALJ may request that acceptable medical sources provide as part of their medical reports an

5

MSS, which is defined as a statement "about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *4 (July 2, 1996); see also 20 C.F.R. § 404.1513(b)(6) (stating that medical reports from acceptable medical sources "should include . . . [a] statement about what [the claimant] can still do despite [his] impairment(s)").

The absence of an MSS does not, by itself, render a medical report incomplete. See 20 C.F.R. § 404.1513(b)(6) ("Although [the Commissioner] will request [an MSS] about what [a claimant] can still do despite [his] impairment(s), the lack of the [MSS] will not make the report incomplete."). A case must be remanded for failure to develop the record only "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980). "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." Ripley v. Chater, 67 F.3d 552, 557 n.22 (5th Cir. 1995). If a plaintiff fails to show that he "was prejudiced by the ALJ's failure to develop the record, remand is not warranted." Zook v. Comm'r of Soc. Sec., No. 2:09cv109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010) (unpublished).

Eason argues that the ALJ's failure to obtain an MSS from Dr. Larabee warrants a remand. Eason, however, has failed to demonstrate that further documentation from Dr. Larabee would have affected the ALJ's determination. See Gatling v. Astrue, No. 2:11-CV-21-FL, 2012 WL 4359435, at *5 (E.D.N.C. June 28, 2012) (unpublished). Moreover, substantial evidence enabled the ALJ to evaluate Eason's hip impairments and to determine whether Eason was disabled, notwithstanding the lack of an MSS from Dr. Larabee. See, e.g., Skinner v. Astrue,

478 F.3d 836, 843–44 (7th Cir. 2007). The ALJ did not err in failing to request an MSS from Dr. Larabee. See Ripley, 67 F.3d at 557 n.22.

Next, Eason argues that the ALJ erroneously failed to evaluate his physical RFC by not performing a function-by-function assessment of his capabilities. Specifically, Eason contends that the ALJ erred by not making findings explicitly addressing Eason's ability to bend or stoop or to sit for six hours a day.

Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996) requires the ALJ to perform a function-by-function analysis. The "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." Id. at *1. The ALJ, however, need not describe the function-by-function analysis in the decision. See Mascio v. Colvin, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013) (unpublished); see also Floyd v. Astrue, No. 3:10CV474-FDW-DSC, 2011 WL 4946311, at *2–3 (W.D.N.C. June 6, 2011) (unpublished), adopted, 2011 WL 4946270 (W.D.N.C. Oct. 18, 2011) (unpublished). Thus, the ALJ did not err.

Alternatively, the ALJ's decision makes clear that he did consider Eason's ability to bend or stoop and to sit. As for Eason's ability to bend or stoop, the ALJ expressly acknowledged Eason's contention that "he is unable to do a lot of bending." Tr. 13 ¶ 5, 26. The ALJ also discussed the May 2009 opinion of consultative examiner Wiley T. Cockrell, M.D., that Eason "would encounter difficulties with prolonged standing/walking/climbing and repetitive bending/stooping/squatting" due to his collective physical impairments. Tr. 14 ¶ 5. In addition, the ALJ discussed the physical RFC assessments of the Disability Determination Services ("DDS") nonexamining consulting physicians Stephen Levin, M.D. and N.B. Shah, M.D., dated June 3, 2009 and September 8, 2009, respectively, finding Eason capable of light work with

7

"limitations in performing postural activities." Tr. 15 ¶ 5. Specifically, Dr. Levin found Eason capable of frequent stooping (Tr. 348), and Dr. Shah found him capable of occasional stooping Id. at 365. Moreover, the ALJ stated that while he believed Eason to be limited to sedentary work, as opposed to light work, he otherwise accorded "ample weight" to these opinions. Id. at 15. Furthermore, at the hearing, the ALJ specifically included in his hypothetical to the VE a limitation of avoiding "frequent postural activities such as stooping or crouching." Id. at 42. Ultimately, of course, the ALJ included in Eason's RFC the explicit limitation that he not perform frequent postural activities, including stooping. Id. at 12. In sum, the record shows that the ALJ considered Eason's contention regarding bending or stooping, and it also shows that substantial evidence supports the ALJ's analysis.

As for Eason's ability to sit, the ALJ considered the issue. At the hearing, the ALJ questioned Eason regarding his ability to sit:

Q. How about sitting? Do you have any problems sitting?

A. Yes.

Q. Okay, how long can you sit before you have to get up?

A. Usually somewhere around 45 minutes to a[n] hour or so.

Tr. 30. In his decision, the ALJ discussed Dr. Cockrell's report. Tr. 14 ¶ 5. Dr. Cockrell did not find that Eason had any difficulties with sitting. See Tr. 344. Dr. Cockrell opined that Eason is "able to ambulate, sit, and lay supine and get back up without assistance." Tr. 341. Moreover, Eason did not complain to Dr. Cockrell about sitting. Tr. 340–41. The ALJ also considered the physical RFC assessments of Dr. Levin and Dr. Shah, which state their shared opinion that Eason was able to "[s]it (with normal breaks) for a total of . . . about 6 hours in an 8-hour workday." Tr. 347, 364.

8

Although the ALJ did not expressly reference Eason's testimony about not being able to sit for more than 45 to 60 minutes, the ALJ did not have to reference it expressly. As noted, an ALJ need not discuss each function. Moreover, and in any event, the ALJ rejected Eason's contention concerning sitting by not including a sit/stand option in his RFC determination. Furthermore, by finding Eason able to perform sedentary work, the ALJ found that Eason was able to sit "most of the time." DOT app. C § IV.c (defining "Sedentary Work"). Substantial evidence supports this finding. In addition, Eason cites no evidence supporting his testimony about his claimed inability to sit for no more than 45 to 60 minutes, and the ALJ properly found him not fully credible. This lack of support for Eason's testimony regarding his sitting ability further vitiates the need for the ALJ to have discussed it. See Vanburen v. Astrue, No. 5:11-CV-615-FL, 2012 WL 5493602, at *3 (E.D.N.C. Nov. 13, 2012) (unpublished), adopted, 2012 WL 5499887 (E.D.N.C. Nov. 13, 2012) (unpublished).

In sum, the ALJ considered Eason's ability to bend or stoop and to sit. In doing so, the ALJ applied proper legal standards and substantial evidence supports the ALJ's finding. Thus, the court rejects Eason's argument.

Next, Eason contends that the ALJ failed to properly assess Eason's mental RFC. As noted, Social Security Ruling 96-8p provides that the "RFC assessment must . . . assess [the claimant's] work-related abilities on a function-by-function basis." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. § 404.1545(b)–(d). The functions to be considered include mental abilities, such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(c). The ALJ should use this function-by-function analysis to determine a claimant's RFC for application at steps four and five of the sequential analysis.

The ALJ does so after applying the special technique for mental impairments employed at steps two and three, which focuses on broad functional areas, or the so-called "Paragraph B criteria," of activities of daily living: social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

In applying the special technique, the ALJ found that Eason had mild limitations in activities of daily living and social functioning; moderate limitations in concentration, persistence, or pace; and no episodes of decompensation. Tr. 11–12 ¶ 4. The ALJ made detailed findings to support these determinations, citing Eason's statements in administrative reports and his testimony about his daily activities and the medical evidence. For example, with respect to Eason's activities of daily living, the ALJ found:

> At the disability hearing, [Eason] stated that he sweeps, cooks, shops, drives certain distances and mows the grass. In his adult function report, dated February 20, 2009, [Eason] reported that he was able to dress/feed himself, to do laundry and to perform light housework (Exhibit 3E).

Tr. 11 ¶ 4. As for the ALJ's finding of mild limitations in social functioning, the ALJ stated:

> At the hearing, [Eason] testified that he attends Church and visits with his neighbors. In his adult function report, [Eason] noted that he was able to attend Church; to visit with friends and to get along with authority figures very well (Exhibit 3E).

Id.

As for Eason's concentration, persistence, or pace, the ALJ based his finding of moderate limitations on the records of Eason's treating psychiatrist, Patricia Wesson, M.D. See id. at 11 ¶ 4. In discussing Eason's RFC, the ALJ elaborated on his assessment of Dr. Wesson's records:

> In reference to [Eason's] mental issues, Dr. Wesson treated [Eason] for depression in 2010. However, on May 25, 2010, [Eason] reported that he was doing better and that his medication was helping with his overall mood; which evidenced that [Eason's] mental issues were improving with treatment. In addition, even though Dr. Wesson determined that [Eason] possessed a global

10

assessment functioning (GAF) of 50 (indicating serious impairments in social and occupational functioning), Dr. Wesson also observed that [Eason] exhibited organized/goal-directed thought processes and good judgment/insight with no signs of flighty ideas or incoherence. In addition, [Eason] denied experiencing hallucinations, delusions or suicidal/homicidal thoughts. Furthermore, [Eason] reported that he had good relationships with his family members. These examination results do not seem to support a finding of a GAF of 50; therefore, the undersigned assigns less weight to the GAF finding (Exhibit 16F). Dr. Wesson's evaluation findings evidenced that [Eason] was able to mentally function, even with his depression.

Id. at 14 ¶ 5. The ALJ also noted Eason's statement in his February 2009 adult function report (Tr. 166) that he was able to deal with stress/routine changes. Id. at 13 ¶ 5. Moreover, the ALJ's evaluation of Eason's mental impairments is reflected in his RFC determination, specifically, his restriction of Eason to SRRT's. Id. at 12 ¶ 5. Thus, the ALJ gave significant weight to the evidence in the record of Eason's mental impairments.

Notwithstanding the ALJ's thorough analysis, Eason contends that the record contains insufficient evidence of his mental condition to enable the ALJ to make the detailed assessment required for the RFC determination and that the ALJ improperly made medical judgments about Eason's mental impairments. The court disagrees. Substantial evidence supports the ALJ's determinations regarding Eason's mental impairments. Although the ALJ discussed some of the evidence bearing on Eason's mental impairments in connection with applying the special technique, that same evidence is relevant to the ALJ's RFC determination. After all, the court must read the ALJ's decision as a whole. See, e.g., Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (per curiam) (unpublished); Finley v. Astrue, No. 5:08–CV–209–D(1), 2009 WL 2489264, at *5 (E.D.N.C. Jul. 8, 2009) (unpublished), adopted, 2009 WL 2489264, at *1 (E.D.N.C. Aug. 13, 2009) (unpublished). In sum, substantial evidence supports the ALJ's evaluation of Eason's mental impairments and the ALJ applied the proper legal standards. Accordingly, the court rejects Eason's argument.

11

Next, Eason contends that the ALJ erred by not making a specific finding concerning the credibility of Eason's testimony that he could sit for only 45 to 60 minutes. The ALJ's assessment of a claimant's credibility involves a two-step process. Craig, 76 F.3d at 593–96; Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 n.1, *2 (July 2, 1996); 20 C.F.R. § 404.1529(a)–(c). First, the ALJ must determine whether the claimant's medically documented impairments could cause the claimant's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. See id.; see also 20 C.F.R. § 404.1529(c)(3). If the ALJ does not find the claimant's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, *4; see Jonson v. Colvin, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28, 2013) (unpublished); Dean v. Barnhart, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step-one finding that Eason's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 13 ¶ 5. At step two, the ALJ found that Eason's allegations were not fully credible. Id. The ALJ found that "[Eason's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Id. The ALJ also provided specific reasons for his credibility determination grounded in the record evidence, including Eason's activities of daily living and the medical evidence. See id. The same conclusion holds true concerning the credibility of Eason's complaints of limitations in standing, bending, and performing physical or mental activities due to knee problems/pain,

depression, sleep apnea, residuals of hip surgery, and constant fatigue. Cf. id.

In sum, in assessing Eason's credibility, the ALJ applied the proper legal standard and substantial evidence supports the findings. Accordingly, the court rejects Eason's challenge to the ALJ's credibility determination.

Finally, Eason argues that the ALJ's failure to perform a proper mental RFC assessment resulted in an incomplete hypothetical to the VE with respect to Eason's mental limitations. Hypothetical questions posed to a VE must include all of a claimant's impairments that are supported by the record for the VE's answer to be considered substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Cuevas v. Astrue, No. 12–4644, 2013 WL 1932933, at *5 (D.N.J. May 8, 2013) (unpublished).

Eason's final argument largely rests on the erroneous premise that the ALJ's assessment of his mental impairments was improper. As discussed, the premise is flawed. Accordingly, the court rejects Eason's challenge to the ALJ's hypothetical.

III.

In sum, the court GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 24], DENIES Eason's motion for judgment on the pleadings [D.E. 19], and AFFIRMS the Commissioner's final decision. The action is DISMISSED. The clerk shall close the case.

SO ORDERED. This 11 day of September 2013.

JAMES C. DEVER III
Chief United States District Judge